UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ALPHA CAPITAL ANSTALT and
ELLIS INTERNATIONAL LTD.,

                    Plaintiffs,

    – against –

SCHWELL WIMPFHEIMER & ASSOCIATES LLP,
DOV SCHWELL, MICHAEL HUGHES,
WILLIAM SCHMITZ, ADEEB SABA,
and MARK MATTHEWS,

                    Defendants.

------------------------------------------------------------------x

17-cv-1235

**COMPLAINT**

        Plaintiffs Alpha Capital Anstalt ("Alpha") and Ellis International Ltd. ("Ellis") (collectively, "Plaintiffs"), by their undersigned counsel, for their complaint as against defendants Schwell Wimpfheimer & Associates LLP, Dov Schwell, Michael Hughes, William Schmitz, Adeeb Saba and Mark Matthews (collectively, the "Defendants"), state as follows:

**Nature of the Action**

        1.     This action is brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). In March 2014, Arista Power, Inc. ("Arista") (a non-party to this action as a result of its having filed a bankruptcy petition in January 2016 in the United States Bankruptcy Court for the Western District of New York) fraudulently induced Plaintiffs to invest $995,000 in a private transaction for the purchase of Arista securities. To induce Plaintiffs' purchase, Arista and its officers, defendants Saba and Mathews, fraudulently

misrepresented the Company's ongoing business operations and failed to disclose that Arista was being investigated by the United States Securities and Exchange Commission (the "SEC") for securities fraud.  Indeed, that SEC investigation has revealed that, since September 2012, Arista and its CEO, defendant William Schmitz, have been making false and misleading filings with the SEC to hide the fact that Arista's "line of credit" which was purportedly with an independent third party lender was actually being funded by an Arista shareholder previously been found by the SEC to have engaged in securities fraud.

2. At all relevant times, Defendants Schwell and Hughes, partners of law firm, Schwell Wimpfheimer & Associates, LLP ("SWA"), and SWA itself were controlling persons of Arista under Section 20(a) of the Exchange Act and are therefore liable for the damages caused to Plaintiffs by the violations of Section 10(b) and Rule 10b-5 by Arista and its officers. In a highly unusual and inappropriate blurring of the lines between lawyer and client, Defendants Schwell and Hughes wore multiple hats, serving as both outside counsel to Arista and as Chairman of the Board of Directors and Chief Legal Officer of the Company, respectively.

3. In such dual roles, Schwell and Hughes, and through them, SWA, were intimately involved in all aspects of the Company's business, operations, and strategy, and, perhaps most egregiously, in the drafting and preparation of Arista's fraudulent filings with the SEC.  Such incestuous and intertwined roles as both outside counsel and Chairman and CLO of Arista made defendants Schwell and Hughes control persons of Arista under Section 20(a) and, in turn, elevated their firm, defendant SWA into a control person as well.

## PARTIES

4. Plaintiff Alpha Capital Anstalt is an entity organized under the laws of Lichtenstein.

5. Plaintiff Ellis International Ltd. is an entity organized under the laws of Panama.

6. Defendant Schwell Wimpfheimer & Associates LLP ("SWA") is a law firm with offices in New York, New York. At all relevant times, SWA was the primary outside counsel to Arista.

7. Upon information and belief, defendant Dov Schwell is a resident of the State of New Jersey. At all relevant times, Defendant Schwell was both the managing partner of SWA, the Chairman of the Board of Directors of Arista and a member of the Arista Board's Audit Committee.

8. Upon information and belief, defendant Michael Hughes is a resident of the State of Pennsylvania. At all relevant times, Defendant Hughes was both a partner of SWA and the chief legal officer ("CLO") of Arista. As CLO, Hughes was heavily involved in Arista's management and decision making, and had primary responsibility for Arista's legal affairs.

9. Upon information and belief, defendant William Schmitz is a resident of the State of New York. At all relevant times, Defendant Schmitz served as Chief Executive Officer of Arista and a member of its Board of Directors.

10. Upon information and belief, defendant Adeeb Saba is a resident of the State

of New York.  At all relevant times, Defendant Saba served as Arista's Chief Operating Officer ("COO").

11.  Upon information and belief, defendant Mark Matthews is a resident of the State of South Carolina.  At certain relevant times, Defendant Matthews served as the President of Arista and as a member of Arista's Board.

## JURISDICTION AND VENUE

12.  Plaintiffs' claims arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 thereunder.

13.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.

14.  Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.

## STATEMENT OF FACTS

**Solicitation of Plaintiffs' Investments in Arista**

15.  At all relevant times, Arista Power Inc. ("Arista" or the "Company"), a publicly traded company located in Webster, New York, represented to the public that it was engaged in two business segments within the energy business: (1) the development and installation of its purported proprietary custom power management and delivery system called Power on Demand ("POD"), and (2) the sale of solar energy systems.

16.  According to Arista, its POD system stored energy from multiple sources, including solar, wind and fuel cells, and utilized its proprietary technology to release the energy

4

at optimal times to maximize energy efficiency and reduce costs. The Company touted its patented POD system as a transformative technology that, although in its early stages, was the growth engine and the key to Arista's future.

17. In early 2014, Arista and Defendants Saba and Matthews undertook an effort to solicit investments from Plaintiffs in Arista securities. At a February 2014 meeting in midtown Manhattan with representatives of Alpha and Ellis (the "February 2014 Meeting"), Saba and Matthews touted Arista's growth potential as a result of its POD technology and represented that this purported proprietary technology would more efficiently manage energy distribution and cost than alternative systems. Saba and Matthews stressed to Plaintiffs the critical nature of Arista's pilot POD project, which they represented was already underway at a large residential building in Queens known as Rose/City Lights (the "Rose/City Lights Project").

18. At the February 2014 Meeting, Saba and Matthews represented to Alpha and Ellis that the Rose/City Lights Project was to be the first large scale application of Arista's POD system and that, if the project was successful, it was likely to create many more significant commercial opportunities for application of this technology in other buildings. Saba and Matthews further advised Plaintiffs that Arista had already commenced discussions with other buildings about installing its POD system.

19. At the February 2014 Meeting and in follow-up conversations, Saba and Matthews represented to Plaintiffs that Arista needed Plaintiffs' investment funds in order to quickly complete the installation of the Rose/City Lights Project, which they stated, with the

procurement of such financing, they expected to be finished within 120 days.  Saba and Matthews advised Alpha and Ellis at the Meeting that they anticipated that the project would serve as the prototype for future projects and the key to a dramatic expansion of Arista's business.

20. At the February 2014 Meeting, Saba and Matthews represented to Plaintiffs that Arista was seeking to raise a total of $1.5 million, and that such a financing would be more than sufficient to enable it to complete the Rose/City Lights Project.   They further stated that these funds were the only issue holding up completion of the Rose/City Lights Project.

21. The representations made to Plaintiffs by Saba and Matthews at the February 2014 Meeting and in their subsequent communications were false and misleading. Indeed, Plaintiffs subsequently learned that Arista did not have any personnel on the premises at Rose/City Lights and had yet to commence installation of its POD system at the Rose/City Lights building either at the time these representations were made, or by the date of Plaintiffs' investment on March 31, 2014.

22. Indeed, Plaintiffs subsequently learned that, at the time of Plaintiffs' investments, Arista had not even obtained the approvals and permits necessary to commence work on the Rose/City Lights Project, including required approvals from the New York Buildings Department, the New York State Energy Research and Development Authority and Con Edison.  Furthermore, upon information and belief, some of the necessary permit applications had not even been submitted by Arista prior to the investments on March 31, 2014.

23. Notwithstanding such facts, at the time they solicited Plaintiffs' investments

in Arista, Defendants Saba and Matthews falsely represented that installation of the Rose City/Lights Project had commenced, and concealed from Plaintiffs the fact that Arista had not even obtained the necessary approvals to proceed with the Project.  Furthermore, in light of the failure of Arista to obtain the required permits and approvals by such time, the representation by Arista, Saba and Matthews that the receipt of additional financing was the only impediment to the completion of the Rose/City Lights Project within 120 days was knowingly false.

24. Pursuant to a Securities Purchase Agreement, dated March 31, 2014 (the "SPA"), Plaintiffs, as part of a $1.5 million private financing transaction, collectively invested $955,000 ($800,000 from Alpha and $155,000 from Ellis) in preferred stock of Arista.

25. Plaintiffs relied on the fraudulent misrepresentations of Arista, Saba and Matthews regarding the status of the Rose/City Lights Project in determining to invest $955,000 in Arista securities.  Had Plaintiffs been aware of the true status of the Project, neither Alpha nor Ellis would have purchases Arista's securities.

26. In its capacity as primary outside counsel to Arista, SWA issued a legal opinion, dated March 28, 2014, in connection with the closing of Plaintiffs' investment (the "SWA Opinion Letter").  In determining the make an investment in Arista securities, Plaintiffs relied upon the representations made by SWA in the SWA Opinion Letter.

27. In January 2016, Arista filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York in Rochester, New York.  The Chapter 7 case remains pending.

**Defendants Fraudulently Misrepresented the Nature of Its Financing
Activities and Concealed The Fact That It Was Funded By An
<u>Individual Barred From Involvement With Public Companies</u>**

28.     On September 10, 2012, Arista filed with the SEC a Form 8-K signed by defendant Schmitz disclosing that Arista had entered into a Credit Agreement with an entity called TMK-ENT ("TMK"), pursuant to which TMK had purportedly provided Arista with a $500,000 revolving line of credit.  Arista made no disclosures in the Form 8-K concerning the identity of TMK or the parties who owned and controlled it, thereby leading the public to believe that TMK was not a related party and that the Credit Agreement was an arms' length transaction with an independent lender.

29.     On November 16, 2012 and December 24, 2012, Arista made additional filings with the SEC signed by defendant Schmitz (collectively, with the September 8, 2012 filing on Form 8K, the "2012 SEC Filings") stating that TMK had increased its line of credit with Arista to $750,000 and $1.25 million, respectively.  Once again, neither of these SEC filings contained any related party disclosure concerning TMK.

30.     Upon information and belief, at the time of the 2012 SEC Filings, TMK was not an independent party or an arms' length lender, but rather was owned and controlled by Peter Kolokouris ("Kolokouris") and/or members of his family, who at the time were significant Arista shareholders.

31.     Notably, Kolokouris had been previously charged by the SEC with securities fraud.  Specifically, in *SEC v. Peter Kolokouris, North Atlantic Fisheries, Inc., Flower City Chemicals, Inc. And Zorba's Palace, Ind.*, Civ-89-0682-T (W.D.N.Y.)(LR-12525), the SEC

8

charged Kolokouris with securities fraud in connection with a company called North Atlantic Fisheries, Inc., including misappropriating proceeds from an initial public offering and receiving illegal kickbacks from an underwriter.  As part of his settlement with the SEC, Kolokouris resigned as an officer and director of NAF and other entities, agreed to an injunction prohibiting from serving as an officer or director or owning 5% or more of the securities of any public company, and disgorged more than $2 million.

32. The fraudulent misrepresentations and omissions by Arista and defendant Schmitz in the 2012 SEC Filings were material to Plaintiffs' decisions to invest in Arista securities.  By fraudulently claiming in the September 2012 Form 8-K that Arista had successfully raised capital from an independent third party on arms' length terms, rather than a Company shareholder with a history of securities fraud, Arista created a false and misleading picture of Arista's financial stability and the capabilities of its management.

33. Moreover, by fraudulently concealing the role of Kolokouris as its financing source, Defendants provided Plaintiffs and the investing public with a false and misleading picture of the independence and integrity of Arista and its management.  Had Plaintiffs known of the significant influence and involvement of an individual with a history of securities fraud in Arista's affairs and the willingness of Arista's officers and directors to allow such an individual to play such a concealed role, they would not have purchased Arista's securities.

34. Furthermore, in the SPA signed by Defendant Schmitz on behalf of Arista, Arista specifically represented to Plaintiffs in Section 3.1(h) that: "As of their respective dates, the SEC Reports complied in all material respects with the requirements of the Securities Act

and the Exchange Act, as applicable, and none of the SEC Reports when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading." Pursuant to Section 3.1(h), this representation covered the two-year period prior to March 31, 2014, during which Arista made the foregoing fraudulent misrepresentations in its 2012 SEC filings.

35. Additionally, in Section 3.1(x) of the SPA, Arista specifically represented that: "All of the disclosure furnished by or on behalf of the Company to the Purchasers regarding the Company . . .when taken together as a whole is true and correct and does not contain any untrue statement of material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances in which they were made, not misleading."

36. Given the fraudulent misrepresentations and omissions regarding the Line of Credit, the foregoing representations to Plaintiffs in the SPA were false and misleading.

**Fraudulent Failure to Disclose the Resignation of Arista's Auditor**

37. In the SPA, Arista further represented to Plaintiffs that the "[t]he Company's accounting firm is set forth on Schedule 3.1(cc) of the Disclosure Schedules" to the SPA. Schedule 3.1(cc), in turn, identified EFP Rotenberg LLP ("Rotenberg") as the Company's auditor. The SPA further stated that there were "no disagreements of any kind presently existing, or reasonably anticipated by the Company to arise, between the Company and the accountants and lawyers formerly or presently employed by the Company . . ."

38. These representations were false and misleading.  Indeed, upon information and belief, prior to Plaintiffs' investment in Arista on March 31, 2014, Arista had been informed by Rotenberg that it was resigning as Arista's auditor.  Arista, however, did not publicly disclose Rotenberg's resignation until it filed a Form 8-K on December 29, 2014.

39. The foregoing omissions concerning Rotenberg were material since they cast doubt upon the reliability of Arista's financial disclosures.  Had Plaintiffs been aware of Rotenberg's resignation, they would have had significant concerns as to the reliability of Arista's financial statements and would not have invested in Arista securities.

## COUNT I
## Violation of Section 10(b) of the Exchange Act
## and Rule 10b-5 Promulgated Thereunder
## 15 U.S.C. §78j(b)
## (As Against Saba, Matthews and Schmitz)

40. Plaintiffs reallege the allegations set forth in paragraphs 1 through 39 as if set forth fully herein.

41. To induce Plaintiffs' purchase of Arista securities pursuant to the SPA, dated March 31, 2014, Defendants Saba, Matthews and Schmitz and non-party Arista made the foregoing material misrepresentations and actionable omissions to Plaintiffs.

42. Plaintiffs reasonably relied on such misrepresentations and omissions in deciding to purchase Arista securities pursuant to the SPA.

43. Defendant Saba's, Matthews' and Schmitz's and non-party Arista's conduct constitutes a violation of Section 10 of the Exchange Act and Rule 10(b)(5) promulgated thereunder.

44. Plaintiffs, in reliance on the false representations and material omissions detailed above made by defendants Saba and Matthews and non-party Arista at the April 2014 Meeting and in additional statements thereafter, and by defendant Schmitz and non-party Arista in the SPA, purchased Arista's securities. Plaintiffs would not have purchased Arista's securities had they been aware of the actual facts with respect to Arista.

45. As a result of Defendants Saba's, Matthews' and Schmitz's and non-party Arista's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Plaintiffs have been harmed in an amount to be determined at trial, but not less than $955,000.

**COUNT II**
**(Violation of Section 20(a) of the Exchange Act)**
**15 U.S.C. §78t**
**(As against SWA, Schwell, Hughes, and Schmitz)**

46. Plaintiffs reallege the allegations set forth in paragraphs 1 through 39 as if set forth fully herein.

47. By reason of the foregoing, Defendants SWA, Schwell, Hughes, and Schmitz are deemed to be control persons of Arista within the meaning of Section 20(a) of the Exchange Act.

48. By reason of their conduct and control of Arista, Defendants SWA, Schwell, Hughes, and Schmitz are liable to Plaintiffs pursuant to Section 20(a) of the Exchange Act.

49. As a result of Defendants SWA's, Schwell's, Hughes' and Schmitz's violations of Section 20(a) of the Exchange Act, Plaintiffs have been harmed in an amount to be determined at trial, but not less than $955,000.

**COUNT III**
**Common Law Fraud**
**(As Against Defendants Saba, Matthews and Schmitz)**

50. Plaintiffs reallege the allegations set forth in paragraphs 1 through 39 above as if set forth fully herein.

51. As detailed above, to induce the purchase by Plaintiffs of Arista securities, Defendants Saba, Matthews and Schmitz fraudulently misrepresented to Plaintiffs the business and operations of Arista.

52. Plaintiffs reasonably relied on the fraudulent misrepresentations of Defendants Saba, Matthews and Schmitz in deciding to purchase Arista securities.

53. As a direct and proximate result of the fraud of Defendants Saba, Matthews and Schmitz, Plaintiffs have suffered damages in an amount to be proven at trial, but not less than $955,000.

WHEREFORE, Plaintiffs demand that this Court enter judgment in their favor awarding them as follows:

A) On Count I, granting Plaintiffs a money judgment against Defendants Saba, Matthews and Schmitz, jointly and severally, in an amount to be determined at trial, but not less than $955,000, plus interest accrued and accruing;

B) On Count II, granting Plaintiffs a money judgment against Defendants SWA, Schwell, Hughes, and Schmitz, jointly and severally, in an amount to be determined at trial, but not less than $955,000, plus interest accrued and accruing;

C) On Count III, granting Plaintiffs a money judgment against Defendants Saba,

Matthews and Schmitz, jointly and severally, in an amount to be determined at trial, but not less than $955,000, plus interest accrued and accruing;

    D) Punitive damages;

    E) Attorneys' fees; and

    F) Granting Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated:    New York, New York
             February 17, 2017

                                              HOFFNER PLLC

                                              By: */s/David S. Hoffner*
                                                    David S. Hoffner
                                                    hoffner@hoffnerpllc.com
                                                    800 Third Avenue, 13th Floor
                                                    New York, NY 10022
                                                    Tele: (212) 471.6203
                                                    Fax: (212) 935.1166
                                                    Attorneys for Plaintiffs
                                                    *Alpha Capital Anstalt and*
                                                    *Ellis International Ltd.*

<u>Of Counsel</u>
Law Office of Michael Schneider
11 East 44th St., 19th Floor
New York, NY 10017